| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| Caption in Compliance with D.N.J. LBR 9004-2(c) **WOLFF & SAMSON PC** One Boland Drive West Orange, New Jersey 07052 (973) 530-2012 **Robert E. Nies, Esq.** (rnies@wolffsamson.com) *Attorneys for Briad Wenten LLC* | |
| In re: WEN-KEV MANAGEMENT, INC., *et al.*, Debtors. | Case No. 13-36463 (RG) Chapter 11 *(Jointly Administered)* Honorable Rosemary Gambardella Hearing Date: Jan. 8, 2014 at 11:00 a.m. |

**LIMITED OBJECTION BY BRIAD WENTEN LLC TO CERTAIN RELIEF SOUGHT BY DEBTORS' MOTION FOR ORDERS PURSUANT TO SECTIONS 105(a), 363, 365, AND 1146 OF THE BANKRUPTCY CODE (A) AUTHORIZING AND SCHEDULING AN AUCTION AT WHICH CERTAIN OF THE DEBTORS WILL SOLICIT BIDS FOR THE SALE OF THEIR ASSETS; (B) APPROVING PROCEDURES FOR SUBMISSION OF COMPETING BIDS; (C) APPROVING BREAKUP FEE PROVISION; (D) SCHEDULING A HEARING TO CONSIDER APPROVAL OF SUCH SALE AFTER BIDDING PROCESS HAS BEEN COMPLETED; (E) APPROVING THE FORM AND MANNER OF NOTICE OF AUCTION PROCEDURES AND SALE HEARING; (F) AUTHORIZING THE OPENING BID AMOUNT IN FAVOR OF WENESCO RESTAURANT SYSTEMS, LLC; (G) AUTHORIZING THE SALE OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER CLAIMS OF INTEREST AND TRANSFERRING SUCH CLAIMS TO THE PROCEEDS OF SALE; (H) REQUIRING THE LANDLORDS OF THE ASSETS BEING SOLD TO FILE ARREARAGE CLAIMS WITH THE COURT BY FEBRUARY 1, 2014 OR BE BARRED FROM ASSERTING SUCH CLAIMS, IF ANY, AND ASSUMING AND ASSIGNING THE LEASES TO THE HIGHEST BIDDER; (I) APPROVING THE FORM OF THE ASSET PURCHASE AGREEMENT; AND (J) GRANTING RELATED RELIEF INCLUDING, IF NECESSARY, A HEARING UNDER 11 U.S.C. § 506**

TO:   **THE HONORABLE ROSEMARY GAMBARDELLA
United States Bankruptcy Judge
United States Bankruptcy Court for the District of New Jersey**

4338788.3

Briad Wenton, LLC ("Briad"), by and through its undersigned counsel, respectfully submits this limited objection (the "Objection") to certain relief sought by Debtors' Motion for Orders Pursuant to Sections 105(A), 363, 365, and 1146 of the Bankruptcy Code (A) Authorizing and Scheduling an Auction at Which Certain of the Debtors Will Solicit Bids for the Sale of their Assets; (B) Approving Procedures for Submission of Competing Bids; (C) Approving Breakup Fee Provision; (D) Scheduling a Hearing to Consider Approval of Such Sale After Bidding Process Has Been Completed; (E) Approving the Form and Manner of Notice of Auction Procedures and Sale Hearing; (F) Authorizing the Opening Bid Amount in Favor of Wenesco Restaurant Systems, LLC; (G) Authorizing the Sale of the Assets Free and Clear of All Liens, Claims, Encumbrances and Other Claims of Interest and Transferring Such Claims to the Proceeds of Sale; (H) Requiring the Landlords of the Assets Being Sold to File Arrearage Claims With the Court by February 1, 2014 or be Barred from Asserting Such Claims, if any, and Assuming and Assigning the Leases to the Highest Bidder; (I) Approving the Form of the Asset Purchase Agreement; and (J) Granting Related Relief Including, if Necessary, a Hearing Under 11 U.S.C. § 506 (the "**Motion**") [Dkt. 35]. In support of the Objection, Briad respectfully submits:

**PRELIMINARY STATEMENT**

1. At 4:17 p.m. on December 18, 2013, only hours prior to the Court conducting a status conference on December 19, Debtors' counsel advised Briad it would no longer be the stalking horse bidder for Debtors' assets. This was a shock to Briad because it already had heavily negotiated a complicated Asset Purchase Agreement, a form of motion, and a proposed order approving bidding procedures, documents which required only minor revisions and payment of a deposit in order to be considered a final contract. Briad's counsel was informed

4338788.3

2

by a voice mail message that Briad would no longer be the stalking horse to purchase principally all of the Debtor's assets and that, instead, Wenesco Restaurant Systems, LLC ("Wenesco"), a Briad competitor, would be the new stalking horse bidder.

2. Apart from likely generating collateral litigation in state court for tortious interference with prospective economic advantage and infringement of copyrighted legal materials prepared and paid for by Briad, a cursory review of Debtors' Motion demonstrates that Briad already has served as a stalking horse because its legal work and due diligence was extensively relied upon by Wenesco in making its de minimus "higher" bid.

3. Indeed, the "new" asset purchase agreement with Wenesco, including the form of Motion to get it approved and the proposed order to approve bidding procedures, were substantially prepared by Briad's legal counsel. The implicit representation by Debtors and Wenesco that Wenesco might qualify as a stalking horse for having negotiated and documented its deal is patently false. Rather than having expended money for which a stalking horse might normally seek compensation, Wenesco has saved tens of thousands of dollars already by illegally usurping Briad's work product and due diligence efforts.

4. In short, Briad objects to approval of Wenesco as a "new" stalking horse because Briad already has served as a stalking horse by having its negotiations and documents relied upon to (i) generate a slightly higher offer by Wenesco, before the auction even commenced; and (ii) prosecute the Motion. In addition, Wenesco cannot be a stalking horse because it has not been formally preapproved by Wendy's to operate the Debtors' eight stores for sale. Indeed, Wenesco implicitly represents in the Motion - - as a condition to being named the new stalking horse bidder - - that Wenesco has formally applied to Wendy's and has been pre-approved to acquire the Debtors' eight stores. Briad respectfully submits Wenesco has not

4338788.3

3

undertaken that formal application process with Wendy's and, therefore, cannot be considered a stalking horse with Wendy's approval. The same applies for Wenesco's claim that its transaction requires no financing. Wenesco, to be a stalking horse, needs to clarify if it is partnering with a financial source or, as Briad proposes, closing this transaction as a cash deal. Until it does so, it cannot be designated a stalking horse.

5.     Accordingly, Briad respectfully submits that, while in fact Briad already has served as a stalking horse, at this point in the process neither Wenesco nor any other bidder, including Briad, should be designated a stalking horse and no one should be entitled to a break-up fee, under the unusual circumstances of this case - - the Debtors having jettisoned Briad as the stalking horse at the eleventh hour, having relied almost verbatim on Briad's legal work product to file the Wenesco Motion, and having presented no factual basis to award a $200,000.00 windfall to Wenesco to the detriment of creditors and other <u>bona fide</u> bidders. The Court should, instead, proceed with a public auction with a level playing field and no competitive advantage to any of the potential qualified bidders. Indeed, if Briad were to be the successful bidder and have to pay Wenesco $200,000.00, it would be paying Wenesco for legal work product it already paid for, negotiations already completed by Briad, and for the due diligence Briad has already undertaken and that resulted in an initial purchase price above $7 Million for the complex sale of eight store locations <u>and a slightly higher offer by Wenesco</u>. That would be absurd and undercut the very concept of a stalking horse. In this case that untoward result would, without question, chill the bidding process and set a dangerous precedent for other Section 363 sales. This is a Court of equity, and that result would be most inequitable, particularly in a jurisdiction that disfavors a pre-auction approval of a break-up fee

for a bidder - - like Wenesco - - that is undeserving of that kind of advantage over its competition.

## LIMITED OBJECTION

**A.    Having Usurped Briad's Legal Work Product and Due Diligence Undertaken to Generate Its Slightly Higher Price, Wenesco Cannot Be A Stalking Horse.**

6.    The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the debtor's estate. See In re Cormier, 382 B.R. 377 (Bankr. W.D. Mich. 2008). In re Wintz Co., 219 F.3d 807, 812 (8th Cir. 2000) (stating that in structuring the sale of assets, "[bankruptcy courts] have ample latitude to strike a satisfactory balance between the relevant factors of fairness, finality, integrity, and maximization of assets"). Briad submits that the bidding procedures proposed by the Motion fail to meet the goals of the bidding process – fairness, integrity and maximization of value.

7.    Wenesco's bid of $7,700,000.00 is only $20,000 more than Briad's initial stalking horse bid of $7,680,000. That $20,000.00 increment would not even be permitted at auction, whether under the bidding procedures of Briad or Wenesco, because it is already $30,000.00 too low. Moreover, in making its de minimus "higher" bid, Wenesco relied upon the legal work and extensive due diligence conducted by Briad and its counsel, Briad having served as a true stalking horse.

8.    The Asset Purchase Agreement attached as an exhibit to the filed Motion was principally negotiated and prepared by Briad and its legal counsel, Wolff & Samson PC. Separately from the Asset Purchase Agreement, counsel for Briad substantially revised and improved the wholly inadequate draft Motion (to approve the Asset Purchase Agreement) initially prepared by Debtor's counsel. See, Nies Cert., Exhibit "G". Annexed to the Nies Cert.

5

4338788.3

as Exhibit "D", is a copy of the draft Motion as improved and revised by Briad's counsel. The Wenesco Motion, Exhibit "A", is substantially identical to the Briad Motion prepared by Wolff & Samson PC, Exhibit "D".

9. At the time Briad undertook this expensive legal work and due diligence it was the stalking horse. This work was prepared for Briad, no one else.

10. The Motion (and Wenesco Proposed Order) that were ultimately filed by Debtor's counsel, which designates Wenesco as a stalking horse, are virtually identical to Briad's Motion and Briad's Proposed Order, with only a few minor changes.

11. Wenesco should be denied stalking horse status because Briad already has served as a stalking horse by (i) generating a slightly higher offer by Wenesco, before the auction even commenced; and (ii) having its legal work product and due diligence relied upon by the Debtor and Wenesco in prosecuting the Motion.

**B.   Wenesco Has Not Shown and Cannot Show That a Break-Up Fee to Wenesco Meets the Third Circuit Requirements of O'Brien Environmental.**

12. Approval of bidding procedures, including a break up fee, are appropriate only in circumstances where the procedures and fees are necessary to preserve and benefit the estate, reasonable, in the best interests of the estate and designed to promote, enhance and encourage bidding. In re O'Brien, 181 F.3d 527 (3d Cir. 1999); see also In re Integrated Resources, Inc., 147 B.R. 650, 663 (S.D.N.Y. 1992).

13. A court will grant bidding protections including a break-up fee when a bidder provides a floor for bidding by expending resources to conduct due diligence and allowing its bid to be shopped around for a higher offer. See Integrated Resources, 147 B.R. at 659. In approving a breakup fee, the court in In re Fortunoff Fine Jewelry and Silverware, LLC, 2008

WL 618983 (Bankr. S.D.N.Y. 2008), held that the break-up fee was an actual and necessary expense of preserving the debtors' assets within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code. The break-up fee was a component of what induced the buyer to submit its bid, which served as a minimum floor bid and provided the debtors with the opportunity to sell their businesses and maximize proceeds for the estate. Id. at *1. The buyer provided a material benefit to the debtors and their creditors by increasing the likelihood of obtaining the best possible price for the assets. Thus, the court approved the break-up fee as reasonable. Id.; see also Reliant Energy Channelview LP, et al., 594 F.3d 200 (3d. Cir 2010) (affirming the bankruptcy court's denial of a break-up as not necessary to preserving the value of the estate); In re O'Brien Environmental Energy, 181 F.3d 527 (3d. Cir. 1999) (same).

14. Briad has no problem with the concept of a stalking horse bidder and break-up fee in this case. As has been shown, Briad is that stalking horse and its $7,680,000.00 "floor" bid did generate a $20,000.00 higher offer - - Wenesco's bid - - prior to the auction even commencing. It would be absurd for Wenesco to now seek that status, having relied on Briad's efforts. Indeed, the Debtors assert that $200,000 is a reasonable break-up fee to pay Wenesco simply because it is equivalent to 2.6% percent of the Wenesco's $7.7 million bid. (See, Nies Cert., Exhibit "A", Motion at page 30, ¶23). That logic ignores the fact that Wenesco has incurred little or no expense in stealing Briad's legal work product and relying upon Briad's due diligence. Indeed, no mention is made of the actual costs Wenesco has incurred in conducting its due diligence. In fact, Debtor is silent about anything Wenesco has done to warrant any kind of fee. Briad submits that such investment costs could not be anywhere near $200,000 because Wenesco has relied upon the due diligence Briad conducted, at considerable expense, as the initial stalking horse. To award Wenesco a break up fee of $200,000, or any amount, would

create an undeserving windfall at the direct expense of competing bidders, including Briad, a competitive bidder whose legal work and due diligence enabled Wenesco to bid initially. Briad would be paying Wenesco for the legal work and due diligence it already paid for. Under the circumstances, Debtor's request for approval of a Wenesco break-up fee should be denied.

15. A more equitable and reasonable approach would be to level the playing field by approving bidding procedures without any stalking horse or break up fee. Such result will be most likely to achieve the paramount goal of any proposed auction process, which is to maximize the proceeds received by the estate. See e.g., In re Food Barn Stores, Inc., 107 F.3d 558, 564-65 (8th Cir. 1997).

## RESERVATION OF RIGHTS

16. Briad reserves its right to further object, supplement and amend this Objection and to object to any proposed sales transaction and all pleadings filed in support or in response thereto at any time, including at the hearing on the bid procedures and the sale hearing.

## CONCLUSION

17. For each of the reasons set forth above, Briad respectfully requests that the Court deny to Wenesco (i) stalking horse status; and (ii) a break-up fee as stated in the Motion. Briad has no objection to remaining bid procedures proposed by the Motion.

                              **WOLFF & SAMSON PC**
                              *Attorneys for Briad Wenten LLC*

                              By:   */s/ Robert E. Nies*
                                    Robert E. Nies

Dated: January 6, 2014