**DUANE MORRIS LLP**
A Delaware Limited Liability Partnership
1540 Broadway
New York, New York 10036-4086
Tel: (212) 692-1000
Fax: (212) 692-1020
Gia G. Incardone, Esq. (GI-0266)
William C. Heuer, Esq.
*Attorneys for ARC CAFEHLD001, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| *In re:* | Case No. 13-36463 |
| **Wen-Kev Management, Inc., et al.,** | **Hon. Rosemary Gambardella** |
| **Debtors.** | **Jointly Administered**<br>**Chapter 11** |

## OBJECTION AND RESERVATION OF RIGHTS WITH RESPECT TO PROPOSED CURE AND ASSUMPTION AND ASSIGNMENT OF LEASE FOR REAL PROPERTY

ARC CAFEHLD001, LLC ("ARC"), through its undersigned counsel and in accordance with an order entered by the Court on January 14, 2014 [Docket No. 49] (the "Order"), hereby objects and reserves its rights (together, the "Objection"), as set forth below, to (i) the proposed "cure" amount identified by the above-captioned debtors (the "Debtors") and (ii) the proposed assumption and assignment of a lease for which ARC is landlord and Debtor Wen-Kev Tinton Falls, Inc. (the "Debtor") is tenant.[1]  In support of this Objection, ARC respectfully represents as follows:

---

[1] On consent, the Debtors agreed to extend the time for ARC to file this Objection through February 4, 2014.

DM3\2803261.2

## FACTUAL BACKGROUND

### A.    The Debtors' Bankruptcy Cases

1.    The Debtors commenced their chapter 11 bankruptcy cases under title 11, United States Code (the "Bankruptcy Code") on December 4, 2013.  Separately, a number of Debtor-related entities commenced chapter 7 bankruptcy cases that same date.  *See* Chapter 7 Case Nos. 13-36475, 13-36476.  The distinguishing factor between those entities that filed for relief under chapter 11, as compared with those that filed under chapter 7, appears to be that the chapter 11 Debtors are the subject of a sale motion that contemplates a continuing going-concern entity post-sale, whereas the chapter 7 debtors appear to be on a liquidation track.

2.    On December 31, 2013, the chapter 11 Debtors filed a motion seeking authority to sell substantially all of their assets, including the assumption and assignment of contracts relating to both real and personal property (the "Sale" and "Sale Motion", respectively).

3.    By Order entered on January 14, 2014, the Court authorized the Sale and approved procedures for an auction of the assets subject to the Sale Motion.  Docket No. 49.

### B.    The ARC Lease

4.    ARC is landlord under a real property lease agreement, originally dated as of September 24, 1991 and amended and modified from time to time thereafter (the "Lease"), pursuant to which Debtor Wen-Kev Tinton Falls, Inc. [Chapter 11 Case No. 13-36467] is lessee.[2] The Lease relates to real property located at 600 Shrewsbury Avenue, Tinton Falls, New Jersey. The Lease term, as amended, runs through December 31, 2016, unless earlier terminated (per the terms of the Lease).

---

[2] The lessee as noted in the Lease documents is Wen-Wall Tinton, Inc.  The petition in Case No. 13-36467 notes that chapter 11 Debtor, Wen-Kev Tinton Falls, Inc., formerly did business as Wen-Wall Tinton, Inc.  *See* Docket No. 1, Case No. 13-36467.  ARC is also the landlord for the related Chapter 7 debtor, Wen-Kev Eatontown, Inc.'s location.  *See* Case No. 13-36475.

DM3\2803261.2

5.      The Lease provides for minimum annual rent ("Minimum Rent"), paid in monthly installments (due in advance of each month).  The Lease also provides for the payment of percentage rent in addition to the Minimum Rent, based upon a percentage of the Debtor's annual gross sales ("Percentage Rent").  In addition to Minimum Rent and Percentage Rent, the Lease requires that the Debtor pay all sales and use taxes applicable to rents, and that the Debtor likewise pay all real property taxes relating to the leased premises.  All utilities must be paid by the Debtor, and the Debtor must maintain insurance to protect the leased premises.

**C.      Notice of Proposed Cure Amount**

6.      On January 16, 2014, the Debtors filed with the Court the Certification of Jewel Nabi, the Debtors' comptroller (the "Proposed Cure Notice").  Docket No. 56.  The Proposed Cure Notice specifies the Debtors' proposed cure amounts for each of the real property leases at issue in the Sale Motion, including the Lease (the "Proposed Cure Amount").  *See* Docket No. 56 at ¶ 4.

7.      For the Lease, the Debtors state that $22,270.64 is owed to ARC.  *Id*.  The Debtors also state that $7,500 is held as a security deposit under the Lease, although it is unclear why the Debtors included this information in the Proposed Cure Notice since, through the sale, the deposit is not being applied to amounts owed as cure.  *See id*.

8.      The Proposed Cure Notice states that objections to the proposed cure amounts must be filed by no later than 5:00 p.m. on Saturday, February 1, 2014.[3]  See id. at ¶ 3.  The Proposed Cure Notice does not, however, identify the "target" date for which cure calculations should be made – i.e., as of February 1, 2014, or as of some other date.

---

[3] As is noted in n.l, *supra*, the Debtors extended the time for ARC to file this Objection through February 4, 2014.

## OBJECTION AND RESERVATION OF RIGHTS

9.      In response to the Proposed Cure Notice and pending Sale Motion and auction, ARC (i) objects to the Proposed Cure Amount and (ii) reserves its rights to assert objections to the assumption and assignment of the Lease to any purchaser, owing to the fact that the identity of the ultimate purchaser is not yet known.

**A.      Objection to Proposed Cure Amount**

10.     Section 365 of the Bankruptcy Code governs the assumption and assignment of contracts.  As is relevant here, the statute provides that

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee –
>
> > (A) cures, or provides adequate assurance that the trustee will promptly cure, [defaults];
> >
> > (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b).

11.     ARC objects to the Proposed Cure Amount because it fails to satisfy the Debtor's obligations to ARC under the terms of the Lease, as is required by statute.

12.     Although the Debtors contend that $22,270.64 is owed as cure, ARC's records indicate that, as of February 1, 2014, the amount owed by the Debtor to cure Minimum Rent deficiencies is no less $35,965.34 ($8,902.31 for each of November 2013 and December 2013, and $9,080.36 for each of January and February 2014).

13.     The Lease requires that the Debtor pay all property and other taxes relating to the leased premises.  As of February 1, 2014, county and municipal taxes in the amount of no less than $7,868.94 will be due and owing.  Those amounts must be paid as cure.

14.     Similarly, a sewer tax bill in the amount of $814.11 was due and owing by the Debtor as of January 1, 2014, but remains unpaid (and is accruing interest).  That amount, and all interest and other charges accruing because payment is past due, must be paid as cure.

15.     Thus, ARC submits that the following known amounts must be paid as "cure" as of February 1, 2014:

> No less than $35,965.34 as Minimum Rent
> No less than $7,868.94 for county and municipal taxes
> No less than $814.11 for sewer taxes and charges
> **Total**: **$44,648.39**

16.     As is noted above, under the terms of the Lease, the Debtor is also obligated to pay Percentage Rent.  The Debtor is obligated to provide financial data and information to ARC, from which the Percentage Rent amount is calculated.

17.     The Debtor has not provided to ARC the financial data and information necessary to calculate the Debtor's Percentage Rent obligation (providing this information is required by the Lease), although it is clear that any deficiency in Percentage Rent as of the closing of any Sale, must be paid as "cure" in order for the Lease to be assumed and then assigned.

18.     The Debtor is also obligated to pay all utilities and telephone charges for the leased premises.  It is presently unknown whether the Debtor has complied with this obligation. Any amount owed for utilities and telephone service must be paid in full as "cure."

DM3\2803261.2

19.     Finally, ARC notes that all of the Debtor's obligations to ARC shall continue to accrue until a sale, with assumption and assignment of the Lease, has achieved a closing.  All such amounts must be paid in full upon assumption and assignment. [4]

20.     Thus, in addition to the liquidated amounts set out above, as of the closing of any Sale, (i) Percentage Rent must be calculated; (ii) additional taxes attributable to the pre-closing period will continue to accrue; (iii) all utilities must be paid; and (iv) late fees, interest and other charges may continue to accrue.  Because these amounts are not yet ascertainable and/or must be reassessed as of the closing date of any Sale (or assumption and assignment of the Lease), separate and apart from the "cure" amount that must be paid in full at closing, ARC respectfully requests that the Debtor be required to set aside the amount of $20,000 in Sale proceeds as an earmarked reserve for the benefit of ARC in order to ensure the full payment of cure.  Working with the Debtor, ARC will diligently pursue reconciliation of all amounts owed to resolve these cure claims quickly.

**B.     <u>Reservation of Rights</u>**

21.     Bankruptcy Code section 365(f)(2) governs the (i) assumption and then (ii) assignment of an estate contract or lease to third parties.  The statute provides:

> (f)(2) The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> > (A)  the trustee assumes such contract or lease in accordance with the provisions of this section; and
> >
> > (B)  adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

---

[4] Owing to the fact that a firm closing date has not yet been set for a sale transaction, the precise amount of cure that will be owed as of that date cannot be stated at this time.

22.     Thus, the statute makes clear that prior to assignment to a third-party, the Debtor must first assume the Lease and cure all defaults.  As is noted above, the Proposed Cure Notice states an incorrect cure amount and fails to take into account a number of categories of cure obligations that must be satisfied before assumption can take place, let alone assignment.

23.     When the ultimate purchaser of the Debtors' assets is identified, information necessary to analyze whether "adequate assurance of future performance" by the assignee must be given to ARC.  The purchaser must likewise demonstrate that it has insurance in place sufficient to satisfy the insurance provisions of the Lease, and must be able to demonstrate its own financial well-being and wherewithal.  Until such time as that information has been provided, an "adequate assurance" analysis cannot be undertaken.  ARC reserves its rights to request such information and to object to any sale on the basis that the assignee fails to meet the statutory requirements.

## CONCLUSION

ARC, through its undersigned counsel, respectfully requests that this Objection be sustained and that the Debtors be required to pay all "cure" amounts noted above, and that from the Sale proceeds the Debtors further be required to establish an earmarked reserve fund designated for ARC's benefit, in the amount of $20,000, from which any remaining "cure" obligations of the Debtor shall be paid, and requests such other and further relief as the Court deems appropriate and just.

Dated:  February 4, 2014              By:   _/s/ Gia G. Incardone_____
                                            Gia G. Incardone, Esq.
                                            William C. Heuer, Esq.
                                            **DUANE MORRIS LLP**
                                            1540 Broadway
                                            New York, New York 10036
                                            Telephone 212.471-1825
                                            ggincardone@duanemorris.com
                                            wheuer@duanemorris.com
                                            *Attorneys for ARC CAFEHLD001, LLC*